UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Hoch and Joseph Marble,

Plaintiffs,

v.

Civ. No. 01-2104 (JNE/JGL)
ORDER

MasterCard International Incorporated and McCann-Erickson USA, Inc.,

Defendants.

---

Rita Coyle DeMeules, Esq., Ronald J. Schutz Esq., and Carrie M. Smith, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., appeared for Plaintiffs.

Richard Dannay, Esq., and Susan R. Schick, Esq., Cowan, Liebowitz & Latman, P.C. and Calvin L. Litsey, Esq., and Michelle A. Paninopoulos, Esq., Faegre & Benson LLP, appeared for Defendants.

---

This is an action by David Hoch and Joseph Marble (collectively, Plaintiffs) against MasterCard International Incorporated and McCann-Erickson USA, Inc. (collectively, Defendants) for copyright infringement and unjust enrichment. The case is before the Court on Defendants' Motion for Summary Judgment.[1] For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Plaintiffs are two life-long friends in their forties who share a love of baseball and, in particular, the Minnesota Twins Major League Baseball team (Minnesota Twins). In 1998, they formed an organization, Citizens United for Baseball in Minnesota (CUBM) with the goal of keeping Major League Baseball (MLB) in Minnesota. Their efforts included a campaign to build

---

[1] In response to Defendants' motion, Plaintiffs abandon their claim for unjust enrichment. The Court therefore grants Defendants' motion as to this claim.

SEP 1 9 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED SEP 1 9 2003
DEPUTY CLERK'S INITIALS

a new baseball stadium to keep the Minnesota Twins in Minnesota. In support of this goal, Plaintiffs made a thirty-minute documentary in 1998 entitled *Twins—Now and Forever* (*Twins*). Plaintiffs created *Twins* by filming a ten-day road trip that included visits to baseball stadiums in Cleveland, Baltimore, and Denver, all of which had built stadiums in urban settings. In each city, Plaintiffs interviewed stadium representatives, civic leaders, residents, and fans. The interviews emphasized that a MLB team and stadium can be an important community asset. Plaintiffs copyrighted *Twins* in 2001.

McCann-Erickson is an advertising agency that created a series of ads known as the "Priceless" campaign for MasterCard, a credit-card service company. As part of that series, McCann-Erickson created six ads, called the *Trip* ads, highlighting MasterCard's sponsorship of MLB. The *Trip* ads feature two twenty-something male friends on a road trip to visit all thirty MLB stadiums in one summer, purchasing necessities along the way with their MasterCard credit card. McCann-Erickson developed the idea in February 2001, and, after receiving approval from MasterCard and MLB, filmed the *Trip* ads shortly thereafter. MLB ballparks in five cities are depicted in the *Trip* ads: Cincinnati, Boston, Baltimore, San Francisco, and Seattle. Plaintiffs allege that the *Trip* ads infringe on their copyright for *Twins*.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The elements of a claim for copyright infringement are: (1) ownership of the copyright by the plaintiffs; and (2) copying by the defendants. *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The parties do not dispute that Plaintiffs own a valid copyright in *Twins*, so the Court's inquiry is limited to the second element. When, as is the case at hand, there is not direct evidence of copying, a plaintiff may use circumstantial evidence to prove copying. *Moore v. Columbia Pictures Indus.*, 972 F.2d 939, 941-42 (8th Cir. 1992). To establish copying through circumstantial evidence, Plaintiffs must show that Defendants had access to the work and that there is substantial similarity between the works. *See id.*

**A. Access**

Access is established by showing that a defendant had an "opportunity to view or to copy" plaintiff's work. *Id.* at 942. Establishing a "bare possibility of access is not enough; rather, [plaintiff] must prove that defendant[] had a reasonable possibility of viewing his work." *Id.* Access may not be inferred based on conjecture and speculation. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). Here, Plaintiffs assert two theories of access: widespread dissemination and corporate receipt.

*1. Widespread Dissemination*

A reasonable possibility of access may be established by evidence that prior to the

creation of the infringing work, the copyrighted work was widely disseminated to the public. *Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 864 (D. Minn. 2000). Plaintiffs made approximately 500 copies of *Twins*. They argue *Twins* achieved widespread dissemination based on the following: (1) *Twins* was shown once per day for one week at the Baseball Hall of Fame in Cooperstown, New York; (2) it was shown continuously in Minnesota at a CUBM booth for two days at "Twins Fest," a meet-the-players event for fans of the Minnesota Twins; (3) several hundred copies were handed to public officials in Minnesota; (4) Minnesota public television showed at least a portion of *Twins*; (5) Plaintiffs were interviewed on local radio shows and in local papers; and (6) clips of *Twins* were available on CUBM website.

The Court's review of the case law reveals several reoccurring considerations in determinations of widespread dissemination: number of copies distributed, commercial success or notoriety, and national performances or distribution. *See, e.g., Cholvin v. B. & F. Music Co.*, 253 F.2d 102, 103 (7th Cir. 1958) (access found where 2,000 sheets of music and 200,000 records sold and several nationwide broadcasts); *Janel Russell Designs*, 114 F. Supp. 2d at 864 (access found where product was nationally sold, generated substantial revenue, and was nationally advertised to the public as well as the trade); *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp 177, 179 (D.C.N.Y. 1976) (access found where plaintiff's song was number one in the United States for five weeks and top thirty in England for seven weeks); *cf. McRae v. Smith*, 968 F. Supp. 559, 560, 565 (D. Colo. 1997) (no access where 200-500 copies distributed, song won an award, was included in musical compilation tape, and song was performed regionally); *Jewel Music Publ'g Co. v. Leo Feist, Inc.*, 62 F. Supp. 596, 598

(S.D.N.Y. 1945) (no access where over 10,000 copies of song had been sold or distributed and music had been broadcast on national performances).

The evidence in this case reveals that *Twins*' distribution was limited in number and geography, was regionally broadcast, and met with virtually no commercial success. Most of the 500 copies were distributed in the Twin Cities and with the exception of the performances at the Baseball Hall of Fame, all the showings were in Minnesota. It is undisputed that no one associated with the creation of the *Trip* ads was in Cooperstown, New York, or in Minnesota during any of the showings of *Twins*. As to the airings on Minnesota public television, the record reveals that the broadcast took place after the onset of this litigation. Plaintiffs' regional notoriety gained from their appearances on radio and in print does not by itself create an opportunity for Defendants to view *Twins*. Turning to the CUBM website, notwithstanding Plaintiffs ability to track the number of site visits, the record contains no such information for months of February and March 2001 when Defendants created the ads. Without regard to the number of site visits, the clips of *Twins* available on the website contain less than 10% of the film. Indeed, Plaintiffs' letter to Allen Selig, Chief Executive Officer and Commissioner of Baseball, dated January 28, 2000, discloses Plaintiffs' difficulties in distributing *Twins* and in getting people to watch it. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that *Twins* failed to obtain a level of widespread dissemination.

*2. Corporate Receipt Doctrine*

Plaintiffs assert that a reasonable possibility of access is established through the corporate receipt doctrine. *Nimmer on Copyright* describes the doctrine as follows:

> [E]vidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by defendant. But the proof must show that both plaintiff's and defendant's dealings took place concurrently, in order to give rise to an imputation of access. If the

> defendant is a corporation, the fact that one employee of the corporation has possession of plaintiff's work should warrant a finding that another employee (who composed defendant's work) had access to plaintiff's work, where by reason of the physical propinquity between the employees the latter has the opportunity to view the work in the possession of the former.

3 Melville B. Nimmer, *Nimmer on Copyright* § 13.02(A) (1992); *accord Moore*, 972 F.2d at 942-44. At its most basic level, the corporate receipt doctrine allows an inference of access to be drawn when there is a relationship—either based on a common employer or other dealings—between an intermediary who knows of plaintiff's work and the alleged copier. *See Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1357 (C.D. Cal. 1984). However, this relationship cannot be too attenuated so that access is established only "through a 'tort[u]ous chain of hypothetical transmittals.'" *Moore*, 972 F.2d at 944 (quoting *Meta-Film*, 586 F. Supp. at 1355).

Here, Plaintiffs offer two avenues under which the corporate receipt doctrine might applies: first through Selig, and second via David Mona, Chairman of the Minneapolis office of Weber Shandwick, a public relations firm. Plaintiffs contend Selig's admitted receipt of *Twins* acts as a corporate receipt because MLB has approval rights over MasterCard's MLB ads. It is undisputed that Selig is not, and has never been, involved with MasterCard's sponsorship deal. Selig's only role in relation to sponsorships is receipt of a report upon conclusion of a new sponsorship. The record further reflects MLB's first contact with McCann-Erickson regarding approval of the *Trip* ads took place after McCann-Erickson conceptualized the *Trip* ads into storyboards. Plaintiffs fail to offer any facts that could give rise to an inference of access through Selig.

With regard to Mona, it is undisputed that he received a copy of *Twins* from Plaintiffs. Plaintiffs assert the corporate receipt doctrine is satisfied insofar as: (1) the Interpublic Group is the parent company to both Mona's employer and McCann-Erickson, and (2) at some point in

the early 1990s, Mona's company had a MasterCard account. First, it is undisputed that Mona has no relationships—business or personal—with anyone involved in the *Trip* ads. Additionally, Mona is located in Minnesota and has no physical proximity to the New York based Defendants. Second, although Mona's firm dealt with a MasterCard campaign in the early 1990s, the record reflects that Mona had no part in it. Plaintiffs have failed to produce evidence of a relationship that could tie Mona to McCann-Erickson or to MasterCard. Viewed in the light most favorable to the Plaintiffs, the evidence shows only the barest possibility based on hypothetical speculation and conjecture that Defendants had access to *Twins*.

**B. Substantial Similarity**

Even if Plaintiffs had shown a reasonable possibility of access, their claim would still fail as matter of law because the two works are not substantially similar. The Eighth Circuit follows a two-step analysis for substantial similarity. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1984). The first step, an objective extrinsic test, analyzes the similarity of ideas. *Id.* If there is a substantial similarity of ideas, the second step, a subjective intrinsic test, evaluates the similarity of expression based on the response of a reasonable, ordinary person. *Id.* Summary judgment is appropriate where "reasonable minds could not differ as to the absence of substantial similarity in expression." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355-56 (9th Cir. 1984); *see also Hartman*, 833 F.3d at 120 (no error in district court's "proceeding to the [intrinsic test] to make its determination at summary judgment stage").

*1. Extrinsic Test*

The extrinsic test focuses on alleged similarities in the objective details of the works. *Litchfield,* 736 F.2d at 1356. It requires a comparison of plot, theme, dialogue, mood, pace, setting, and sequence. *Id.* A court applying the extrinsic test must "filter out and disregard the

non-protectible elements in making its substantial similarity determination." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The Court decides the extrinsic test as a matter of law, *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977), and may rely on expert testimony to conduct the analysis. *Moore*, 972 F.2d at 945.

<u>Plot, Theme and Dialogue</u>

Copyright law only protects the expression of ideas, not the ideas themselves. 17 U.S.C. § 102(b). Accordingly, general plots or stock themes are not protected. *See Cavalier*, 297 F.3d at 823; *Williams v. Crichton,* 84 F.3d 581, 587-90 (2d Cir. 1996). The distinction between an idea and its expression is often difficult to ascertain. In *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930), Judge Learned Hand provided the guiding principle to this inquiry:

> Upon any work, ... a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the most general statement of what the [work] is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the [author] could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended.

*Id.* at 121. In the case at hand, the two works share the similar idea of two male friends traveling on a road trip to visit baseball stadiums. Plaintiffs assert that the two works are substantially similar in that both feature, "adventure-seeking friends who embark on a road trip that has at its heart the love of baseball, as shown through tradition, history and legends associated with the national pastime." Defendants produced expert testimony detailing numerous examples of road trips in film and literature, and travel books devoted entirely to baseball stadium road trips. Indeed, Plaintiffs' characterization applies with equal force to the film *Field of Dreams*. Plaintiffs' expert did not conduct analysis relevant to the extrinsic test, and he admits his lack of

expertise in the areas of visual arts and baseball. The Court thus concludes that the idea of a baseball stadium road trip by automobile is an example of general, unprotected stock theme.

Similarly, *scenes a faire,* sequences of events that flow necessarily from the choice of a setting or situation, are not protected by copyrights. *See Williams,* 84 F.3d at 589 (finding common elements of electrified fences, automated tours, dinosaur nurseries and uniformed workers were *scenes a faire* that flowed from the concept of a dinosaur zoo). In the case at hand, this includes the visuals that flow from the basic idea of a road trip—highway signs, service stops, landmarks for geographic identification, and transportation by automobile. Plaintiffs argue that these "obvious similarities" preclude summary judgment. The Court disagrees and concludes the similarities are nothing more than *scenes a faire*.

Disregarding the unprotected stock themes and *scenes a faire*, a review of the plot, theme and dialogue reveals significant dissimilarity between the two works. Plaintiffs' thirty-minute film is a methodical journey that investigates the economic benefits to a community that builds a downtown baseball stadium. Plaintiffs spend a considerable portion of the film developing this plot by interviewing people involved with the stadiums, fans on the street, and local merchants. The narrative in *Twins* contains an explicit message as to the community benefits of urban baseball stadiums. On the other hand, the two friends in the *Trip* ads have a rather minimalist plot of visiting all thirty MLB ballparks in one summer. Their intent is to create "priceless" memories and to have fun. The characters in the *Trip* ads have little or no dialogue and the story telling depends significantly on the end-titles (*e.g.*, "26 stadiums down, 4 to go: priceless").

<u>Mood and pace</u>

The mood of *Twins* earnestly reflects its purpose. Although Plaintiffs occasionally joke around with each other, their trip maintains a practical, orderly attitude commensurate with the

goals of CUBM. In contrast, the three-and-one-half minutes of *Trip* ads moves at a lightning pace. The *Trip* ads evoke an entirely happy-go-lucky feel, comporting with freedoms associated with summertime youth.

Setting and Sequence

Plaintiffs assert that the geographic sequence is substantially similar between the works. A review of the paths taken in the works reveals no such similarity. *Twins* starts in Minnesota, goes through Chicago (exterior shot of Wrigley Field), to Cleveland, to Baltimore, to Denver and back to Minnesota. The *Trip* ads carve a path that starts in Cincinnati, goes to Boston, to Baltimore, to San Francisco, and then to Seattle. Plaintiffs also contend substantial similarities exist because both the *Trip* ads and *Twins* use similarly colored Volkswagen mini-buses decorated with stickers to effectuate their road trips. The Court agrees that there is clear similarity between the automobiles used. However, this lone common element does not justify a finding of substantial similarity under the extrinsic test.

2. *Intrinsic Test*

The intrinsic test is subjective and asks whether an ordinary, reasonable person would find the "total concept and feel of the works" to be substantially similar. *Krofft*, 562 F.2d at 1167. In the instant case, the concept and feel of the two works are completely different. Whereas the *Trip* ads are snapshots of carefree youths pursuing a summertime goal, *Twins* explores the economic benefits of urban baseball fields with the intent to raise money and support for Plaintiffs' organization, CUBM. No reasonable person could find these two works to be substantially similar.

In short, Plaintiffs have not submitted any evidence to create an issue of fact as to whether Defendants had access to *Twins* and whether *Twins* and the *Trip* ads are substantially

similar. Viewing the record in the light most favorable to Plaintiffs, no reasonable trier of fact could find that Defendants copied *Twins*. The Court therefore grants Defendants' motion.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket No. 28] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 19, 2003

JOAN N. ERICKSEN
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: .

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*